IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENZO BIOCHEM, INC., et al.  ) | |
| ) | Case No. 3-04-CV-929 (JBA) |
| *Plaintiffs*,  ) | |
| ) | |
| v.  ) | |
| ) | |
| APPLERA CORPORATION, et al.,  ) | |
| ) | May 23, 2006 |
| *Defendants*.  ) | |

### GENERAL ELECTRIC'S MOTION TO INTERVENE FOR
### LIMITED PURPOSE AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Pursuant to Rule 24 of the Federal Rules of Civil Procedure and Rule 1.7(a) of the Connecticut Rules of Professional Conduct, General Electric ("GE") respectfully moves this Court to intervene in this action for the limited purpose of seeking to disqualify Hunton & Williams LLP ("Hunton") as counsel for Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences Inc. (collectively "Enzo") and Plaintiff Yale University.[1]

Through its representation of Enzo in this case (the "Connecticut Action"), Hunton is acting directly adverse to GE – a longstanding, substantial client of Hunton – without GE's consent. GE, as the corporate parent of the Amersham businesses acquired before this action was filed, is a defendant in a suit brought by Enzo in October 2002 in the Southern District of New York (the "New York Action"). Enzo asserts against GE in the New York Action many of the same patents that are at issue in this Connecticut Action.

---

[1] Rule 24(c) provides that a motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Because GE is not seeking to assert any claims or defenses in the present action, this procedural requirement appears inapplicable and thus no separate pleading is submitted.

**ORAL ARGUMENT REQUESTED**

The direct adversity between Hunton and GE is manifest, and it has occurred despite repeated warnings by GE and contrary to express commitments by Hunton to resolve the conflict. Simply put, Hunton has collaborated with counsel from Greenberg Traurig LLP ("Greenberg"), Enzo's counsel in the New York Action, with the apparent intent of advancing Enzo's claims against GE in the New York Action. Most recently, GE learned that Hunton prepared work product for Enzo to use contemporaneously against GE in the New York Action. Further, Hunton has recently confirmed Enzo's intent to use Hunton's future work product and any favorable rulings that Hunton obtains from this Court against GE in the New York Action. Such collaboration is obviously in direct conflict with GE's interests.

Faced with Hunton's refusal to abide by relevant ethics rules and its own prior commitments, GE is left with no choice but to move to intervene in this Connecticut Action for the purpose of seeking Hunton's disqualification pursuant to Connecticut Rule of Professional Conduct 1.7(a). If Hunton is not disqualified, the actual conflict will only become more aggravated as both cases proceed. Indeed, additional fact and expert discovery, dispositive motions and trial remain in each case and Hunton has confirmed Enzo's intent to continue seeking to use Hunton's arguments and analysis against GE. For these reasons, and as more fully set forth below, GE respectfully requests that the Court grant GE's limited motion to intervene and its motion to disqualify Hunton.

**FACTUAL BACKGROUND**

Enzo filed a patent infringement and contract action against Amersham plc and Amersham Biosciences ("Amersham"), among other defendants, in the Southern District of New

York on October 23, 2002.[2]  Approximately one year later in October of 2003, GE publicly announced that it would acquire Amersham.  The acquisition was completed on April 8, 2004 and thereafter Amersham became a significant part of the GE Healthcare business of GE.  Although a number of different law firms have represented Enzo in the New York Action, its current counsel, Greenberg, first appeared in the case in June of 2004.

Around that same time, on June 7, 2004, Hunton filed this Connecticut Action on behalf of Enzo.  Five of the six patents that Enzo asserts in the Connecticut Action are asserted against GE in the New York Action.  *See* Declaration of Jennifer Sklenar In Support Of General Electric's Motion To Intervene For Limited Purpose And Disqualify Plaintiffs' Counsel ("Sklenar Decl."), ¶ 2.  GE was a long-standing client of Hunton when the Connecticut Action was filed,[3] and Hunton continues to represent GE on various matters, including intellectual property matters for the same business that is involved in the New York Action.  Declaration of Patrick Murphy In Support Of General Electric's Motion To Intervene For Limited Purpose And Disqualify Plaintiffs' Counsel ("Murphy Decl."), ¶ 4.  At no time did Hunton notify GE of Hunton's intended representation of Enzo, nor did Hunton receive GE's consent.  *Id.,* ¶ 5, 9, 10.

GE first learned that Hunton was actively collaborating with Greenberg to Enzo's benefit in mid-2005.  *Id.,* ¶ 5.  While the full extent of that collaboration is not known, Hunton was clearly involved in preparing at least one of Enzo's key witnesses – Dr. David Ward, who is the inventor on four of the asserted patents in both cases – for purposes of the New York Action.  Indeed, although Hunton had never entered a notice of appearance in the New York Action,

---

[2] The case was filed before the Honorable John E. Sprizzo as Case No. 02 CV 8448 (JES), and was eventually severed into separate cases against each defendant.

Hunton lawyer Jeffrey Perez attended the deposition and entered his appearance on the record for Enzo.  During his testimony, Dr. Ward *confirmed that the Hunton lawyer was involved in his preparation*:

> Q:  With respect to your deposition yesterday and today, how many meetings did you have with counsel?
> A: One.
> [*Q & A Omitted*]
> Q: Who was at that meeting?
> A:  The esteemed counsels on this side of the table.
> Q: That would be—
> A: Scott, Levina, and these three counsel here.
> Q: Okay.  So Ms. Wong, Mr. Bornstein, and Mr. Perez [Counsel from Hunton], right?
> A: Yes.

Sklenar Decl., Exh. A (Aug. 4, 2005 Ward Depo.) at 675:7-17; *see also id*. at 679:17-681:8.

Further, counsel from Greenberg instructed Mr. Ward not to answer questions about conversations with counsel from Hunton, thereby asserting an attorney-client relationship between Enzo and Hunton in a deposition in the New York Action:

> Q:  Do you recall anything that Mr. Perez said.
> Mr. Bornstein [Counsel from Greenberg]:  You can answer that yes or no.
> A: Yes.
> Q:  What was that?
> Mr. Bornstein:  I'm going to direct you not to answer on the basis of the attorney-client privilege.
> Mr. Ulmer [Counsel for Affymetrix – a co-defendant to GE in the New York action]:  And who's asserting that privilege?
> Mr. Bornstein:  Scott Bornstein.
> Mr. Ulmer:  For whom?
> Mr. Bornstein:  Asserting it on behalf of Enzo.

---

[3] In the last two years alone, GE has paid millions of dollars in legal fees to Hunton.  Murphy Decl., ¶ 4.

*Id.* at 680:1-12.  Hunton lawyers also attended portions of the *Markman* hearing in the New York Action and other depositions and conferred with Greenberg lawyers during breaks.  *See* Murphy Decl., ¶ 5.

As set forth in the Declaration of Mr. Patrick Murphy, chief litigation counsel for GE, GE immediately complained to Hunton's head of litigation when Hunton's cross-over into the New York Action came to light.  Murphy Decl., ¶ 6.  Hunton assured GE that this cross-over had been inadvertent and that it would not continue any activities adverse to GE.  *Id.*  Specifically, Hunton promised to maintain an ethical wall between the Connecticut Action and the New York Action. *Id.*

Notwithstanding Hunton's representations to GE, it has become apparent within the last several weeks that the promised ethical wall has been breached – *i.e.,* that Hunton reneged on the commitments it previously made to try to remedy the conflict.   For example, during a conference call among counsel in the New York Action on March 31, 2006, Greenberg notified counsel for GE and other defendants that Enzo intended to seek leave to file before the New York court a claim construction chart that Hunton was preparing for purposes of the Connecticut Action.  *See* Sklenar Decl., ¶¶ 3, 4.  Significantly, the Greenberg lawyer announced Enzo's intention to file the Hunton-prepared document in the New York Action even though he stated that his own firm had "not prepared," had "not seen," and had "no discussions" concerning it *and even though it had not yet been filed in this Connecticut Action*.[4]  *Id.*  Thus, the inescapable conclusion is that Enzo itself is having Hunton prepare work product with the goal of using it

---

[4]  The Hunton-prepared document was filed in the Connecticut Action six days after Greenberg announced Enzo's intent to file it in the New York Action.  *See* Connecticut Action Docket Entry No. 114.

simultaneously against GE in the New York Action.  These events also clearly establish the relatedness of the two cases and the direct adversity of Hunton to GE's interests in New York.

Within a few days after that telephone conference, in-house counsel for GE once again – and in the strongest possible terms – raised its objections to Hunton's activities.  Hunton acknowledged in mid-April 2006 the prior objections by GE.  Murphy Decl, ¶ 8.  However, it stated that it had previously represented that it would cease collaboration with Greenberg for purposes of the New York Action only but that it had been and would continue to collaborate with Greenberg for purposes of the Connecticut Action, including preparing for depositions and hearings.  *Id.*  In fact, Hunton had **never** previously indicated that its collaboration with Greenberg would continue nor did Hunton obtain consent from GE to do so.  *Id.*, ¶¶ 9, 10.  Hunton also confirmed Enzo's intention to continue to use arguments and any orders that Hunton obtains from this Court against GE in the New York Action.[5]  *Id.,* ¶ 9.  Once again, GE has never consented to such adversity.

Over the course of the last several weeks, GE has tried to negotiate in good faith with its long-term law firm Hunton to try to secure Hunton's withdrawal from this case.  Within the last three weeks, these negotiations were broadened to include a third party firm representing Hunton, all in an effort to avoid the need for judicial intervention.  These negotiations have failed, however, and GE has been left with no choice but to file the present motion.  *Id.,* ¶ 11.

---

[5] On April 17, 2006, the parties to this case filed a Stipulation Regarding Claim Terms No Longer In Dispute, which further evidences Enzo's intent to use Hunton's work product in this case against GE.  That document states:  "should this Court issue a claim construction Order, nothing herein shall prevent Plaintiffs from submitting such an Order to the Court in the SDNY cases [*i.e.,* "co-pending actions in the Southern District of New York"]."  *See* Sklenar Decl., Exh. B (April 17, 2006 Stipulation) at 3.  Thus, it is clear even going into the *Markman* hearing that Hunton and/or Enzo are contemplating that Enzo will use any favorable ruling that Hunton may obtain in this case against GE.

**ARGUMENT**

I.  **GE'S MOTION TO INTERVENE SHOULD BE GRANTED**

GE's motion to intervene should be granted under Rule 24 of the Federal Rules of Civil Procedure. GE, a non-party to this case, may move to intervene for the purpose of moving to disqualify counsel for one of the parties to the suit. *Oxford Systems, Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1058, 1067 (W.D. Wash. 1999) (party intervened for the limited purpose of moving to disqualify defendants' counsel); *GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*, 8 F. Supp. 2d 1182 (N.D. Cal. 1998) (party intervened to move to disqualify law firm from representing plaintiff), *vacated as moot*, 192 F.3d 1304.[6]

Rule 24(a) provides for intervention as of right when the movant claims an interest in the subject of the action and "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a). Here, GE has a strong interest in preventing Hunton's continued direct adversity through its representation of Enzo in the Connecticut Action, especially as Hunton's activities are assisting Enzo in a multi-million dollar patent suit against significant GE technology. *Accord In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976) ("If Scragg viewed its interests threatened by the continued representation of Celanese by Mr. Irons, Scragg could have intervened as of right under Rule 24(a) of the Federal Rules of Civil Procedure, and it could have pressed for the disqualification of Mr. Irons.")

This Court is the only forum available to GE to protect its rights because Hunton's ethical violations are taking place during the course of Hunton's representation of Enzo in the

---

[6] GE cites *GATX/Airlog Co.* as persuasive authority to this court because of the similar factual circumstances. This opinion was vacated for reasons unrelated to the rationale of the court.

Connecticut Action.  *See, e.g., Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975) ("The district court bears the responsibility for the supervision of the members of its bar."); *Colorpix Sys. of Am. v. Broan Mfg. Co.*, 131 F. Supp. 2d 331, 335 (D. Conn. 2001) (same).  Moreover, GE is without a remedy in the New York Action because Hunton has not filed a notice of appearance in that case.  No other party to this litigation will protect GE's interests by raising Hunton's violation of its ethical obligations with this Court.  Enzo chose Hunton as their counsel and will not raise the ethical conflict, while the defendants have suffered no injury as a result of Hunton's ethical violations and are unlikely to have standing to raise the issue.  Flamm, Richard E., Lawyer Disqualification:  Conflicts of Interest and Other Bases § 19.1 (2003).  Thus, the Court should grant GE's motion to intervene as of right under Rule 24(a).[7]

## II.  GE'S MOTION TO DISQUALIFY HUNTON SHOULD BE GRANTED

Under governing ethical rules, "a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client and (2) each client consents after consultation."  Conn. Rules of Prof'l Conduct 1.7(a) (2006).[8]  Hunton has violated this rule by acting directly adverse to GE – *i.e.*, by actively assisting Enzo in its suit against GE – without consent and should thus be disqualified.

It has been long established in this state that an attorney may not simultaneously represent clients with conflicting interests without their consent.  Indeed, "a firm may not accept any action against a person whom they are presently representing even though there is no

---

[7]  Alternatively, the Court should exercise its discretion to grant permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure.

[8]  In considering whether Hunton violated its ethical obligations, the Court should look to the professional responsibility rules as approved by the Judges of the Connecticut Superior Court.  D. Conn. L. Civ. R. 83.2(a); *Colorpix Sys.*, 131 F. Supp. 2d at 335.

relationship between the two cases." *Grievance Comm. v. Rottner*, 152 Conn. 59, 65 (1964) (noting that this rule should be "rigidly followed" because when a client engages a lawyer, he has the "undivided loyalty of the one upon whom he looks as his advocate and his champion"); *Connecticut Limousine, LLC v. Industrial Roofing and Paving*, 2005 Conn. Super. LEXIS 416 (Super. Ct. Conn. Feb 17, 2005) ("necessary" to disqualify firm to "enforce the lawyer's duty of absolute fidelity" in suit against plaintiff corporation where firm currently represents other corporations that are owned by the same trust that owns plaintiff).

This rule recognizes the practical limits of counsel to provide uncompromised representation to their clients. *See Beets v. Collins*, 65 F.3d 1258, 1270 (5th Cir. 1995) ("When multiple representation exists, the source and consequences of the ethical problem are straightforward:  counsel represents two clients with competing interests and is torn between two duties.  Counsel can properly turn in no direction.  He must fail one or do nothing and fail both.") (citation and quotations omitted); *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) ("An attorney cannot properly serve two masters."); *Fiandaca v. Cunningham*, 827 F.2d 825, 829 (1st Cir. 1987) ("In short, the combination of clients and circumstances placed [counsel] in the untenable position of being simultaneously obligated to represent vigorously the interests of two conflicting clients.  It is inconceivable that NHLA, or any other counsel, could have properly performed the role of 'advocate' for both plaintiffs and the *Garrity* class, regardless of its good faith or high intentions.  Indeed, this is precisely the sort of situation that Rule 1.7 is designed to prevent."). "[A] client who learns that her lawyer is simultaneously representing an adversary – even with respect to a matter wholly unrelated to the one for which counsel was retained – cannot…sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship." Flamm, *supra* § 3.4; *see also Cinema 5, Ltd. v. Cinerama, Inc.*, 528

F.2d 1384, 1386 (2d Cir. 1976) ("A lawyer's duty to his client is that of a fiduciary or trustee. . . . When Cinerama retained Mr. Fleischmann as its attorney in the Western District litigation, it was entitled to feel that at least until that litigation was at an end, it had his undivided loyalty as its advocate and champion, . . . , and could rely upon his 'undivided allegiance and faithful, devoted service.'") (quotations omitted).[9]

Direct adversity for purposes of Rule 1.7(a) is not limited to the situation where a firm is suing one client on behalf of another. *Braunstein v. Statewide Griev. Comm.*, 2001 Conn. Super. LEXIS 462, 22-23 (Conn. Super. Ct. 2001). As a general principle, a direct adversity conflict arises when a lawyer asserts on behalf of one current client, a claim or defense that is contrary to the interests of another current client. Flamm, *supra* § 3.3; *Freedom Wireless, Inc. v. Boston Comm. Group, Inc*., Case No. 2006-1020 (Fed. Cir. Mar. 20, 2006) (disqualifying counsel under analogous Mass. R. Prof. C. 1.7(a) where counsel "asserted a position that an injunction obtained on behalf of one client…should limit the activity of another client[.] In this situation, a clear and direct conflict of interest has arisen.") (unpub.) (courtesy copy attached as Exhibit C to the Sklenar Declaration); *Jenkins by Agyei v. Missouri,* 931 F.2d 470, 485 (8th Cir. 1991) ("a conflict of interest exists between two parties when one party wishes to challenge the legitimacy of a court-ordered remedy and another party stands to benefit from the same remedy the first party is challenging"); *North Star Hotels Corp. v. Mid-City Hotel Assoc*., 118 F.R.D. 109, 111 (N.D. Minn. 1987) (law firm disqualified where its representation of one client was "directly

---

[9] In *Cinema 5*, for example, the mere appearance of representing conflicting interests led the court to disqualify plaintiff's counsel. 528 F.3d at 1387. In that case, defendants moved to disqualify the firm that represented plaintiff because one attorney for that firm also was a partner at another firm that represented defendants in separate litigation in another district. *Id.* at 1385. The Second Circuit affirmed, even though there was no evidence that the firm's work-product or confidential information was used to disadvantage the client. *See id.* In contrast, there are repeated examples here of collaboration between Greenberg and Hunton to GE's detriment.

adverse" to the financial interests of two other non-party partnership clients); *see also* Rule 1.7, Official Commentary ("Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.").

In *GATX/Airlog Co.*, the Northern District of California court found that representation of one client that was adverse to another current client violated the firm's duty of loyalty and had to be disqualified. 8 F. Supp. 2d at 1184 (applying Cal. R. Prof'l Conduct). There, the firm advanced assertions on behalf of one client, GATX, in litigation with Evergreen that could be used in potential future litigation between GATX and BNY, another client of the firm. *Id.* at 1184-1185. The court explained why there was "no doubt" that the firm could not continue its representation of GATX:

> Because any defense that GATX has against the Evergreen aircraft can also be asserted against the BNY aircraft, [the firm] must be disqualified from representing GATX in the Evergreen action. The defenses [the firm] has and would assert, and discovery that [the firm] has and would conduct, for GATX against the other aircraft owners has also been and would be adverse to BNY's interests.

*Id.* at 1188.

As in the above cases, there can be no doubt that through Hunton's representation of Enzo, Hunton has become "directly adverse" to GE's interests, in violation of Rule 1.7(a). Direct adversity is demonstrated here by the facts that: (i) Hunton appeared adverse to GE during depositions in the New York Action; (ii) Hunton has continued to actively collaborate with GE's opposing counsel to the detriment of GE; (iii) Hunton has generated work product that

Enzo is seeking to use contemporaneously against GE; and (iv) Hunton has confirmed Enzo's intent to use Hunton's future work product and any favorable rulings that Hunton obtains from this Court to Enzo's advantage in the New York Action.

Very similar conduct has resulted in an ethical conflict when a firm that represented a client in certain matters, like Hunton does GE, collaborated with another firm, like Greenberg, in an unrelated suit against that client. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2nd Cir. 1977). In *Fund of Funds*, Morgan Lewis was longtime regional counsel for Arthur Andersen. *Id.* at 227. Morgan Lewis was then hired by Fund of Funds in litigation against John King for losses sustained by Fund of Funds ("*King* litigation"). *Id.* at 227-228. When facts emerged that Andersen also was potentially liable to Fund of Funds, Morgan Lewis took a number of steps "in a partial response" to this ethical dilemma, including making it a policy that no attorney involved with Andersen matters would work on the Fund of Funds case, attempting to avoid discussions involving Andersen liability, and building an ethical wall.[10]  *Id.* at 229. Eventually, Fund of Funds hired the law firm Milgrim Thomajan to represent it in its suit against Andersen. *Id.*

Even though Morgan did not represent Fund of Funds directly in its suit against Andersen, the court found that Morgan's action continued to be adverse to Andersen. First, it was Morgan who suggested to Fund of Funds that it retain the Milgrim firm. *Id*. at 231. In Morgan's work in connection with the *King* litigation, Morgan supplied Andersen documents to Fund of Funds attorneys. *Id.* at 229. Morgan inquired with Fund of Funds concerning the status of the *Andersen* litigation. *Id.* at 229. An associate for Morgan attended an interview conducted

---

[10] Interestingly, both the district court and Second Circuit agreed that under these circumstances, "no such 'Chinese Wall' could be created in a single firm." *Id.* at 229 n.10. Thus, it should be no surprise that Hunton's "ethical wall" has not proved effective.

by the Milgrim firm with a former employee of Fund of Funds.  *Id.* at 232.  Morgan used an expert who was given a "statement of tasks" that involved both actions, and the fees were split between Morgan and Milgrim.  *Id.*  Morgan participated in meetings at which Andersen was discussed.  *Id.*  Morgan also reviewed the *Andersen* complaint and opined on a possible defense that Andersen might assert.  *Id.* at 232.  The court condemned these ethical failures:

> As a current and actual client at the time Morgan Lewis accepted the retainer from Fund of Funds, Andersen had an absolute right to the firm's undivided loyalty.  [*Citation*]  However strenuously Morgan Lewis labored to avoid any prejudice to the interests of Andersen – and the record does indicate Morgan Lewis's repeated efforts to escape sinking into the ethical quagmires its representation of the Fund invited – it was a goal impossible to achieve.  At every turn, lawyers in Morgan Lewis were presented with documents which touched on Andersen's potential liability…Judge Stewart's delineation of the many ways in which Morgan Lewis participated in the investigation and filing of a suit against Andersen – the recital of which, in our view, does not exhaustively define the evidence of their involvement – amply demonstrates the wisdom of the admonition in *Cinema 5* that "no man can serve two masters."

*Id.* at 232-233.  Ultimately, the Second Circuit found the contamination between Morgan and Milgrim so severe that it ordered disqualification of the Milgrim firm in the litigation against Andersen.  *Id.* at 236.  Similarly, this Court should disqualify Hunton because its actions advancing Enzo's claims in Connecticut will undoubtedly be used to assist its client in the New York Action.

Moreover, although not required for a disqualifying conflict, there is substantial overlap between this Connecticut Action and the New York Action, as both cases involve five of the same patents, common factual and legal issues and common witnesses.  If Hunton is allowed to continue in its representation of Enzo, GE will continue to be faced with a situation where Hunton – a firm that does intellectual property work for the same GE business unit targeted by Enzo in New York – is asserting positions as to patent construction, validity, enforceability that

have been and will be directly at odds with positions taken by GE. And, of course, Enzo has expressed the intent to use any helpful ruling from this case in the New York Action.[11]

GE has never consented to Hunton's adversity as required for Hunton to proceed with the representation under Rule 1.7(a). To the contrary, GE has repeatedly objected and received assurances that Hunton would erect an ethical wall and cease any adverse representation. As explained above, GE has only recently learned that such assurances were hollow. Because Hunton is acting directly adverse to GE without GE's consent, Hunton is plainly violating Rule 1.7(a), and disqualification is the only appropriate remedy.

## III. CONCLUSION

For the reasons set forth above, GE respectfully requests that this Court grant its motion to intervene and its motion to disqualify Hunton.

Respectfully submitted,

Dated: May 23, 2006

James Nugent
236 Boston Post Road
Orange, CT  06477
(203) 795-1111(phone)
(203) 795-1019 (fax)

---

[11] It should be noted that GE does not need to show that any harm has resulted or will result. Under Rule 1.7, a conflict exists when a firm undertakes an engagement adverse to an existing client in another matter, whether or not the matters are related and regardless of whether there is actual prejudice. As a New Jersey district court succinctly stated in applying an analogous Rule 1.7:

> To establish an ethical violation under Rule 1.7(a), one does not have to prove prejudicial impact, negative result, or an exchange of confidential information. The only prerequisites for the establishment of an ethical violation are those clearly set forth in the rule itself…[to show] a direct adverseness of interest falling within Model Rule 1.7(a)…. It is the interests of the clients with which the rule is concerned, not the result obtained.

*In re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235, 243 (D.N.J. 2000), *rev'd in part on other grounds in* 264 F.3d 201 (3d Cir. 2001).

15

        Mark D. Wegener
        Edward Han
        Matthew M. Wolf
        Howrey LLP
        1299 Pennsylvania Ave., N.W.
        Washington, D.C.  20004
        (202) 783-0800 (phone)
        (202) 383-6610 (fax)

        Jennifer A. Sklenar
        Howrey LLP
        550 South Hope Street
        Suite 1100
        Los Angeles, CA  90004
        (213) 892-1921 (phone)
        (213) 892-2300 (fax)

        *Counsel for the General Electric Company*

## Certificate of Service

       I hereby certify that on this 23rd day of May, 2006, a copy of the foregoing General Electric's Motion to Intervene for Limited Purpose And Motion to Disqualify Plaintiff's Counsel was served upon the following counsel of record via regular, first class mail, postage prepaid:

Jennifer A. Albert
Emerson V. Briggs, III
David A. Kelly
Jeffrey T. Perez
Scott L. Robertson
Hunton & Williams-DC
1900 K St., NW
Washington, DC 20006-1109

Marie A. Casper
Edward R. Scofield
Zeldes, Needle & Cooper
1000 Lafayette Blvd., Suite 500
PO Box 1740
Bridgeport, CT 06601-1740

Gregory N. Stillman
Hunton & Williams LLP-Norfolk,VA
500 East Main St., Suite 1000
P.O. Box 3889
Norfolk, VA 23510

*Counsel for Plaintiffs Enzo Biochem Inc., Enzo Life Sciences, Inc. and Yale University*

Aimee Jennifer Wood
James T. Shearin
Pullman & Comley
850 Main St., Po Box 7006
Bridgeport, CT 06601-7006

Mamoni Bhattacharyya
Nicolas Groombridge
Ryan Owens
Peter Sandel
Ling Zhong
Weil, Gotshal & Manges - NY
767 Fifth Ave.
New York, NY 10153-0119

*Counsel for Defendants Applera Corp. and Tropix Inc.*

David J. Lender
Weil, Gotshal & Manges - NY
767 Fifth Ave.
New York, NY 10153-0119

*Counsel for Defendant Applera Corp.*

                                                  _____