THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| ENZO BIOCHEM, INC., ENZO LIFE SCIENCES, INC., and YALE UNIVERSITY, | ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3-04-CV-929(JBA) |
| v. | ) ) ) | |
| APPLERA CORP. and TROPIX, INC., | ) ) ) ) | |
| Defendants. | ) | |

**DECLARATION OF RONALD C. FEDUS, ESQ. IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO APPLERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF LACHES**

I, Ronald C. Fedus, Esq., declare and state as follows:

1. I am patent counsel at Enzo Biochem, Inc. ("Enzo"), a plaintiff in this lawsuit. I have been Enzo's in-house patent counsel since 1990. The facts stated here are based on my own personal knowledge, and if called at trial, I could and would testify competently as to those facts.

2. Enzo is a New York corporation with a principal place of business at 60 Executive Blvd., Farmingdale, New York 11735, and one of its corporate offices at 527 Madison Avenue, New York, New York 10022. Between 1997-2004, Enzo had fewer than 300 employees. During this time, Enzo's legal department consisted of myself and another attorney at times, and one or two paralegals who were responsible for overseeing and managing all of Enzo's litigation and other legal procedures.

3. I have been informed by counsel that Applera is asserting the affirmative defense of laches. At the request of counsel, I make this declaration to provide details of Enzo's negotiations with third parties and other litigations that Enzo was involved in between 1997-2004.

4. During this time, Enzo was pursuing business relationships with numerous companies on the distribution of products relating to nucleic acid probe technology and DNA sequencing technology covered by, *inter alia*, U.S. Patent Nos. 5,328,824, 5,449,767, and 5,476,928 (collectively, "Ward Patents"). The negotiations were often quite lengthy, and did not always result in a business relationship being established. Most of these negotiations involved either myself or Dr. Elazar Rabbani, CEO of Enzo, and occasionally other Enzo employees. (AHS Dec. Exs. 66-77, 92.)[1]

5. Nevertheless, Enzo was able to consummate five distributorship agreements. For example, Enzo completed and entered into distributorship agreements with Wako Pure Chemical Industries, Ltd. on May 16, 1997 and with Li-Cor, Inc. on October 20, 1997. (AHS Dec. Exs. 78 and 79.)

6. About a year later, Enzo completed and entered into distributorship agreements with Affymetrix, Inc. on April 24, 1998 and with Taiwan Life Support Systems, Inc. on September 21, 1998. (AHS Dec. Exs. 80, 81.)

7. On January 1, 1999, after more than 15 months of negotiations, Enzo entered into a Distributorship Agreement and separate Settlement Agreement with NEN Life Science Products ("NEN"). The Settlement Agreement included the following provision: "NEN further

---

[1] The exhibit numbers follow those set forth in Plaintiffs' memorandum.

stipulates that the Enzo [Ward] patents dominate the aforementioned U.S. Patents Nos. 5,047,519, 5,151,507 and 5,608,063." (AHS Dec. Exs. 65, 67, 82)

8. Enzo was also engaged in negotiations with Amersham. Amersham and Enzo had entered into a Distributorship Agreement on February 21, 1995. In the spring of 1999, the parties discussed the possibility of expanding their relationship. Over the next two years, the parties tried to reach an exclusive business relationship in the area of nucleic acid sequencing. (AHS Dec. Exs. 66, 85.)

9. Enzo and Amersham were on the verge of entering into a new agreement when Applera and Amersham, who had been in litigation for several years over patents for DNA sequencing technology, entered into settlement discussions. These settlement talks derailed two years of extensive discussions between Enzo and Amersham, and it was the latter who decided at the last minute not to enter into a new business agreement with Enzo by refusing to sign the final document.

10. This breakdown in negotiations is memorialized in correspondence between Enzo and Amersham. For example, in an email sent on June 22, 2001 to Dr. Anthony Rollins, Amersham's Vice President of the Intellectual Property, I stated that "[y]ou indicated in our telephone call today that in light of next week's settlement talks with Applied Biosystems which involve sequencing products, Nycomed's management has decided to postpone finalizing our Amendatory Agreement for the next week or two. By doing so, Nycomed is delaying the finalization of an agreement that has been the subject of discussions for almost two years." (AHS Dec. Ex. 84.)

11. A few weeks later I expressed my disappointment again to Dr. Rollins: "[s]ince the onset of discussions more than two years ago, our companies reached an agreement on the

principles for resolving our differences" and the following day an email was sent to Dr. Rollins stating, "[w]e are deeply disturbed by your statement in today's telephone conversation that Nycomed Amersham is not willing to enter into our Amendatory Agreement if it reaches a settlement with Applied Biosystems, Inc. (ABI) in its California litigation. As you know, the Amendatory Agreement is ready for execution." (AHS Dec. Exs. 85, 86.)

12. On December 21, 2001 Enzo filed a Request for Interference against U.S. Patent No. 5,821,058, a patent directed to sequencing polynucleotides and owned by the California Institute of Technology, and licensed to Applera. This request was refiled on September 28, 2004 and an interference was declared on November 8, 2006. (AHS Dec. Ex. 83.)

13. Throughout this time, Enzo was also involved in negotiations with other companies with whom it already had entered into distributorship agreements, either in an effort to resolve disputes that arose in connection with those agreements or to renew their agreements. When negotiations with several of these companies showed no signs of being resolved, Enzo filed suit. (AHS Dec. Ex. 98.)

14. On October 23, 2002, Enzo sued Amersham, Perkin-Elmer, Sigma-Aldrich, Molecular Probes and Orchid Biosciences asserting, *inter alia*, breach of contract and patent infringement. The involved patents relate to DNA sequencing, nucleic acid probe technology and solid support formatting and include the Ward Patents that are being asserted in this case against Applera. About a year later, Enzo sued Affymetrix on similar types of claims and on May 24, 2004, Roche filed a declaratory judgment action against Enzo on the patents involved in these suits. The cases were consolidated in the Southern District of New York, where they are currently pending. (AHS Dec. Ex. 98.)

15. The defendants in the New York suit are very large companies. Perkin Elmer's revenues between have run approximately $1.5 Billion per year; the revenues of Sigma-Aldrich have run about the same. Molecular Probes most recently had yearly sales of about $20 million; Orchid's sales have run about $60 million per year and Affymetrix' revenues over have run about $300 million per year. Roche's revenues have run about $27 billion per year and those of GE Healthcare/Amersham's at about $15 billion. (AHS Dec. Ex. 90.)

16. In comparison, Enzo's revenues have run about $30 to $40 million per year. (AHS Dec. Ex. 91.)

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 26th day of March, 2007.

_____
Ronald Fedus, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2007, a copy of the foregoing DECLARATION OF RONALD C. FEDUS, ESQ. IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO APPLERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF LACHES was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be send by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Esther Steinhauer