UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ENZO BIOCHEM, INC., ENZO LIFE SCIENCES, INC., and YALE UNIVERSITY | ) ) ) ) ) | CIVIL ACTION NO. 3:04cv00929 (JBA) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| APPLERA CORP. and TROPIX INC. | ) ) ) | |
| Defendants. | ) | |

DEFENDANTS' MEMORANDUM IN OPPOSITION TO
ENZO'S MOTION FOR AN AWARD OF
PRE- AND POST-JUDGMENT INTEREST

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.    The Court Should Deny Pre-Judgment Interest Because of
      Enzo's Seven-Year Delay in Filing Suit ........................................................................... 3

II.   If the Court Awards Pre-Judgment Interest,
      It Should Do So Using the Treasury Bill Rate Compounded Annually ............................ 7

CONCLUSION ...................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*800 Adept, Inc. v. Murex Secs., Ltd.,*
 505 F. Supp. 2d 1327 (M.D. Fla. 2007)...............................................................3, 4

*Accuscan, Inc. v. Xerox Corp.,*
 No. 96Civ.2579(HB), 2000 WL 280005 (S.D.N.Y. Mar. 15, 2000) ...................7, 8

*Acticon Tech. v. Heisei Elec. Co., Ltd.,*
 No. 06-CV-4316 (KMK), 2008 WL 356872 (S.D.N.Y. Feb. 5, 2008)....................8

*Baum Research and Dev. Co., Inc. v. Univ. of Massachusetts at Lowell,*
 No. 1:02-cv-674, 2009 WL 2095982 (W.D. Mich. July 14, 2009) ........................8

*Church & Dwight Co., Inc. v. Abbott Labs.,*
 No. 05-2142 (GEB) (LHG), 2009 WL 2230941 (D.N.J. 2009)....................4, 6, 10

*Cornell Univ. v. Hewlett-Packard Co.,*
 No. 01-CV-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009)................... passim

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
 246 F.3d 1336 (Fed. Cir. 2001)......................................................................1, 3, 4

*Datascope Corp. v. SMEC, Inc.,*
 879 F.2d 820 (Fed. Cir. 1989)...............................................................................7

*Fonar Corp. v. Gen. Elec. Co.,*
 902 F. Supp. 330 (E.D.N.Y. 1995) ........................................................................8

*Gen. Motors Corp. v. Devex Corp.,*
 461 U.S. 648 (1983).........................................................................................3, 8, 9

*Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors'*
 *Committee of Bayou Group LLC,* 491 F. App'x 201 (2d Cir. 2012) .....................11

*Hockerson-Halberstadt, Inc. v. Propet USA, Inc.,*
 62 F. App'x. 322 (Fed. Cir. 2003) .........................................................................8

*Intex Plastic Sales Co. v. Hall,*
 20 U.S.P.Q.2d 1367 (N.D. Cal. 1991) ...................................................................8

*Laitram Corp. v. NEC Corp.,*
 115 F.3d 947 (Fed. Cir. 1997).......................................................................2, 7, 9

*Loeffler v. Frank,*
 486 U.S. 549 (1988)...............................................................................................5

# TABLE OF AUTHORITIES CONTINUED

**Page(s)**

CASES

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
  862 F.2d 267 (Fed. Cir. 1988)......................................................................1, 5, 6

*Mainland Indus., Inc. v. Standal's Patents Ltd.*,
  No. 81-928, 1985 WL 6021 (D. Or. Oct. 15, 1985)...........................................4, 6

*Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*,
  833 F. Supp. 2d 333 (E.D.N.Y. 2011) ............................................................5, 8

*Michaels v. Art Betterley Enters.*,
  No. 90-CV-1015, 1996 WL 722007 (W.D.N.Y. Dec.12, 1996)...........................8, 9

*Phillips Petroleum Co. v. Rexene Corp.*,
  No. Civ.A. 90–208–LON, 1997 WL 781856 (D. Del. Sept. 4, 1997) ..................7, 9

*Polaroid Corp. v. Eastman Kodak Co.*,
  16 U.S.P.Q2d 1481 ...........................................................................................8

*Poupore v. Astrue*,
  566 F.3d 303, 306 (2d Cir. 2009)....................................................................11

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass North Am., Inc.*,
  707 F. Supp. 2d 737 (N.D. Ohio 2010)............................................................1, 3

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
  No. 97-7014, 2002 WL 34365826 (S.D. Fla. June 4, 2002).........................4, 6, 11

STATUTES

28 U.S.C. § 1961.................................................................................2, 6, 7, 8, 11

35 U.S.C. § 284.............................................................................................3

Defendants Applera Corp. and Tropix Inc. ("ABI") respectfully submit this memorandum in opposition to Plaintiffs Enzo Biochem, Inc., Enzo Life Sciences, Inc., and Yale University ("Enzo")'s motion for an award of pre- and post-judgment interest (D.I. 525).

## INTRODUCTION

Enzo seeks $25.6 million in pre-judgment interest, a whopping 53% surcharge on the jury's $48.6 million verdict.  The Court should deny Enzo's motion, for two reasons:

**First**, Enzo's proposed amount is so high only because Enzo waited seven years to sue and delayed resolution of this case by maintaining assertion of five patents that have been held invalid, not infringed, and/or that Enzo eventually dropped.  Courts have found far shorter delays to warrant denial of any pre-judgment interest.   In *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, for example, the Federal Circuit affirmed a district court's refusal to award pre-judgment interest because of the plaintiff's two-year delay.  246 F.3d 1336, 1362 (Fed. Cir. 2001); *accord Saint-Gobain Autover USA, Inc. v. Xinyi Glass North Am., Inc.*, 707 F. Supp. 2d 737, 766-77 (N.D. Ohio 2010) (four years).

Enzo will argue in reply that the Court's rejection of ABI's laches defense entitles Enzo to pre-judgment interest.  *See* D.I. 523 at 36-52.  But the Court found that "the issue of unreasonable delay is a close one." *Id.* at 44.  And in the same case in which the Federal Circuit observed that "withholding of prejudgment interest based on delay is the exception, not the rule," the court remanded the case for a determination of whether pre-judgment interest should be denied even though the defendant's formal laches defense had failed.  *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988).  That ABI's laches defense narrowly failed does not mean that Enzo should reap a windfall of its own making, prejudicing ABI.

**Second**, Enzo inflates its calculation by using an interest rate for which it provides no case law support, let alone other support.  Rather than using the "average, one-year T[reasury]

bill rate, compounded annually" which is how "prejudgment interest should be calculated" absent justification otherwise, *see, e.g., Cornell Univ. v. Hewlett-Packard Co.,* No. 01-CV-1974, 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009) (Rader, C.J. sitting by designation), Enzo uses what its expert, Dr. Bell, describes as the "after-tax debt rate of the infringing party," compounded semi-annually.  Enzo Br. at 6-7.  This rate seems to be the rate of long-term bonds issued by ABI and other companies with AA Moody's ratings.  Bell Decl. Ex. B (D.I. 525-1). Enzo provides no evidence for deviating from the accepted practice of using the T-Bill rate to calculate pre-judgment interest when the plaintiff fails to substantiate a different rate.  *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).

As explained in Point II below, Enzo's focus on ABI's debt rate makes no economic or legal sense:  the amount needed to compensate Enzo should not depend on who the infringer is, any more than the amount needed to compensate a tort victim depends on the identity of the tortfeasor.  That is why courts rely on published T-Bill rates or, occasionally, the rate at which the patent owner could have borrowed money (the prime rate).  Enzo has not asserted that the prime rate applies here or attempted to make a showing about its own borrowing costs.  Instead, it has invented an unprecedented rate based on <u>ABI's</u> finances.  Not coincidentally, that rate yields $25,612,118, more than double the amount reached by applying the T-Bill rate.  The customary T-Bill rate results in a pre-judgment interest total of $12,428,728, which is fully a quarter of the jury's verdict, and—if the Court is inclined to award pre-judgment interest at all— is more than sufficient to compensate Enzo.

Finally, the parties agree that Enzo is entitled to post-judgment interest at the statutory T-Bill rate.  *See* 28 U.S.C. § 1961 (requiring post-judgment interest at "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

Federal Reserve System, for the calendar week preceding the date of the judgment," and "compounded annually.").

## ARGUMENT

### I.   The Court Should Deny Pre-Judgment Interest Because of Enzo's Seven-Year Delay in Filing Suit

Although 35 U.S.C. § 284 authorizes pre-judgment interest in patent cases, the Supreme Court has held that whether to award pre-judgment interest is not an absolute right, but rather is committed to the discretion of the district court.  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983).  For example, pre-judgment interest may not be appropriate where, as here, "the patent owner has been responsible for undue delay in prosecuting the lawsuit."  *Id.*

That is the case here.  Enzo delayed filing this lawsuit for more than <u>seven years</u> after Enzo was aware of its potential claims against ABI.  It is undisputed that Enzo told ABI in written correspondence before 1997 that ABI should compensate Enzo for "past infringement." *See* D.I. 523 at 40-41.  It is also undisputed that ABI "hung up" on Enzo in August 1997, ending the parties' negotiations.  *Id.* at 41.  Further, Enzo knew or should have known of ABI's alleged infringement because the structure of ABI's products was publicly available by 1997.  *Id.* at 42. Nevertheless, Enzo chose not to sue ABI until June 2004, more than more seven years after it first could have filed its Complaint.  Even on Enzo's version of events, the "discovery" of the Macevicz Letter in 2003 confirmed Dr. Rabbani's prior concerns about infringement, yet Enzo still did not file suit until the next year.

Laches is presumed where a delay is six years long.  Denial of pre-judgment interest requires far less.  Courts have denied pre-judgment interest in cases where the patentee delayed for two years, *see Crystal Semiconductor*, 246 F.3d at 1362, for four years, *see Saint-Gobain Autover USA,* 707 F. Supp. 2d at 766-77, for three to five years, *see 800 Adept, Inc. v. Murex*

*Secs., Ltd.*, 505 F. Supp. 2d 1327, 1333-35 (M.D. Fla. 2007), *aff'd in part & rev'd in part on other grounds*, 539 F.3d 1354, 1358 (Fed. Cir. 2008), and for six years, *see Mainland Industries, Inc. v. Standal's Patents Ltd.*, No. 81-928, 1985 WL 6021, at *5 (D. Or. Oct. 15, 1985).

In *Crystal Semiconductor*, the Federal Circuit affirmed the district court's rejection of pre-judgment interest due to the patentee's delay in filing suit where the patentee knew by March 1995 that the defendant had infringed, but that it waited until January 1997 to file its action for infringement.   246 F.3d at 1362.   While the patentee claimed that it spent those two years building its case and investigating the infringing products, the Federal Circuit held that the district court was within its discretion in concluding that the patentee's delay was "self-serving" and "caused the damages owed. . . to escalate."   *Id.*   And in *800 Adept*, the court observed that the delay "might not have been an intentional litigation tactic, but it nonetheless prolonged resolution of the underlying business dispute." 505 F. Supp. 2d at 1334-35.

Here ABI was prejudiced by Enzo's delay in filing suit.  The interest itself is such a prejudice:  had Enzo sued earlier, ABI's interest burden would be lower.  ABI also contends that it suffered evidentiary and economic prejudice, as set forth in its post-trial briefing regarding laches and estoppel.  The Court did not find this prejudice to be material for purposes of laches, but that finding does not preclude a finding of prejudice for purposes of pre-judgment interest. *See Church & Dwight Co., Inc. v. Abbott Labs.,* No. 05-2142 (GEB) (LHG), 2009 WL 2230941, at *7 (D.N.J. 2009) ("this Court's Laches Opinion does not prevent Abbott from arguing that C & D unduly delayed in filing suit"); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, No. 97-7014, 2002 WL 34365826, at *3 (S.D. Fla. June 4, 2002).  ABI bore the burden of proving prejudice as part of its laches defense.  Enzo bears the burden of proving its entitlement to

damages, one component of which is pre-judgment interest. *See Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (pre-judgment interest is "an element of complete compensation").

Further, the fact that the pre-judgment interest in this case spans a period of 14 years (1998-2012) is due not only to Enzo's delay in filing suit but also to Enzo's assertion of five other patents against ABI that indisputably do not cover ABI's products and/or are invalid.  In 2004, Enzo asserted infringement against ABI based on six patents.  The Court granted judgment in favor of ABI as to three of those patents (the '830 patent due to noninfringement (D.I. 248, D.I. 251), the '373 patent due to noninfringement (D.I. 247), and the '928 patent due to invalidity (D.I. 261)).  The Federal Circuit affirmed this Court's judgment as to the '830 patent and the '928 patent, and Enzo did not appeal the judgment as to the '373 patent.  Enzo also dropped its claims as to two patents that it originally asserted (the '955 patent and the '824 patent), dropping one of them on the eve of trial (the '824 patent).  And the sixth patent (the '767 patent) was initially invalidated by the Court, only narrowly survived in the Federal Circuit on indefiniteness grounds under section 112, and stands rejected by the Patent Office as invalid over Bauman prior art.  Having thrown the kitchen sink at ABI in litigation and having forced ABI to defend itself against claims that Enzo either dropped or for which the Court found in favor of ABI, Enzo should not benefit by obtaining a windfall in pre-judgment interest.

Enzo may argue otherwise in reply, citing cases in which courts denied laches defenses and, for the same reasons, awarded pre-judgment interest.  *See*, *e.g.*, *Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 833 F. Supp. 2d 333, 344 (E.D.N.Y. 2011).  But the law is clear that pre-judgment interest may be denied because of delay even where a laches defense fails.  In *Lummus Industries, Inc. v. D.M. & E. Corp.*, the patent owner argued that the district court's rejection of the defendant's laches defense precluded denial of pre-judgment interest as a

matter of law.  862 F.2d at 275.  The Federal Circuit disagreed, remanding to the district court for a fact-specific determination of whether the patent owner's delay warranted denial of pre-judgment interest, irrespective of the denial of the laches defense.  *Id.*  Likewise, in *Mainland Industries*, the court denied pre-judgment interest even though it rejected the formal laches defense.  *See* 1985 WL 6021, at *1-2, 5.  And still other cases have denied laches defenses and separately considered whether to award pre-judgment interest, ultimately concluding that interest was appropriate on the facts of those cases.  *See Church & Dwight Co.,* 2009 WL 2230941, at *7; *State Contracting*, 2002 WL 34365826, at *3.

        In addition, in exercising its discretion and weighing the impact of Enzo's delay, the Court also should assess the strength of ABI's defenses.  In *Mainland Industries*, the court noted not only the plaintiff's "substantaial delay [sic]," but also that defendant's "challenge of the patent was made in good faith," and that "there were significant questions about whether the patents in suit were valid and enforceable, and about whether [mainland's products] infringed the patents." 1985 WL 6021, at *5.  Likewise, ABI's defenses to Enzo's claims were strong.  The jury rejected them, but that is implicit in any discussion of pre-judgment interest.  ABI presented credible non-infringement and invalidity arguments, from prominent experts and knowledgeable fact witnesses.

        That Enzo delayed in filing suit and delayed resolution by maintaining assertion of five patents that have been held invalid, not infringed, and/or that Enzo eventually dropped is indisputable.  What is disputed is the effect of the delay and the prejudice to ABI in assessing pre-judgment interest.  But whereas laches is presumed after six years and may require the defendant to prove material prejudice, whether to award pre-judgment interest is soundly in the court's discretion where pre-filing delay harms the defendant.  ABI respectfully requests that the

Court deny Enzo's motion for pre-judgment interest.  The jury's verdict is (more than) adequate to compensate Enzo for any injury.

## II.     If the Court Awards Pre-Judgment Interest, It Should Do So Using the Treasury Bill Rate Compounded Annually

The standard practice in patent cases is to award pre-judgment-interest rate at the Treasury-bill rate using annual compounding, which is the same rate that is required by statute for post-judgment interest under 28 U.S.C. § 1961.  *See Cornell*, 2009 WL 1405208, at *3.  The Federal Circuit has repeatedly used this Treasury-bill rate.  *See Laitram Corp.*, 115 F.3d at 955 (pre-judgment interest at Treasury Bill rate, compounded annually); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 829 (Fed. Cir. 1989) (affirming interest awarded at rate set forth in § 1961).  Chief Judge Rader, sitting by designation as a trial judge, held that "prejudgment interest should be calculated using the average, one-year T[reasury] bill rate, compounded annually."  *Cornell,* 2009 WL 1405208, at *3.  That is because it adequately compensates the patent owner: "the T-Bill rate has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement."  *Id.*

Courts before and after *Cornell University* have followed its logic, including the *Phillips Petroleum Co. v. Rexene Corp.* case cited in Enzo's brief.  No. Civ.A. 90–208–LON, 1997 WL 781856, at *28 (D. Del. Sept. 4, 1997) ("The Court, in its discretion, agrees with Rexene that the prevailing U.S. Treasury Bill rate is the appropriate interest rate for determining prejudgment interest.  The Court notes that this rate is the rate set by statute for post-judgment interest. 28 U.S.C. § 1961.").  As the court explained in *Accuscan, Inc. v. Xerox Corp.,* awarding pre-judgment interest at the Treasury Bill rate, compounded annually, is appropriate in patent cases because "[t]his is the same rate set forth for awards of post-judgment interest, *see* 28 U.S.C.

§ 1961, and has often been employed by the Federal Circuit and other courts in awarding prejudgment interest in patent cases." No. 96Civ.2579(HB), 2000 WL 280005, at *2 (S.D.N.Y. Mar. 15, 2000); *see also, e.g., Metso Minerals*, 833 F. Supp. 2d at 343-45 (E.D.N.Y. 2011); *Baum Research and Dev. Co., Inc. v. Univ. of Massachusetts at Lowell,* No. 1:02-cv-674, 2009 WL 2095982, at *8-11 (W.D. Mich. July 14, 2009); *Acticon Tech. v. Heisei Elec. Co., Ltd.,* No. 06-CV-4316 (KMK), 2008 WL 356872, at *4 (S.D.N.Y. Feb. 5, 2008); *Fonar Corp. v. Gen. Elec. Co.*, 902 F. Supp. 330, 354 (E.D.N.Y. 1995), *aff'd in part, rev'd in part* 107 F.3d 1543 (Fed. Cir. 1997); *Michaels v. Art Betterley Enters.*, No. 90-CV-1015, 1996 WL 722007, at *3-4 (W.D.N.Y. Dec.12, 1996); *Intex Plastic Sales Co. v. Hall,* 20 U.S.P.Q.2d 1367, 1371 (N.D. Cal. 1991), aff'd, 960 F.2d 155 (Fed. Cir. 1992); *Polaroid Corp. v. Eastman Kodak Co.*, 16 U.S.P.Q.2d 1481, 1541 (D. Mass. 1990).

ABI's expert, Brian Napper, has calculated the pre-judgment interest that would be owed on the jury's verdict using the 52-week Treasury Bill rate, compounded annually. As set forth in his accompanying declaration and its exhibits, pre-judgment interest using the customary rate in patent cases would be $12,428,728. *See* Declaration of Brian W. Napper and attached Exhibits A-D. Mr. Napper's analysis follows the logic articulated by the Supreme Court and followed by the Federal Circuit for awarding pre-judgment interest. The purpose of pre-judgment interest is "to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. at 655-56; *accord Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 F. App'x. 322, 334 (Fed. Cir. 2003). The T-Bill rate does that, as it treats the patent owner as having made an investment on the money he would have received all along in royalty payments.

Enzo wants more than twice the amount calculated using the T-Bill rate, seeking $25,612,118. Enzo Br. at 6-7. Its expert, Dr. Bell, arrived at that total by using what he describes as the "after-tax debt rate of the infringing party," compounded semi-annually. Both Enzo's proposal to compound semi-annually and the rate that Enzo applies to its calculation are wrong as a matter of law.

First, Dr. Bell chooses to compound interest semi-annually based on the typical interest payment schedules for corporate bonds. In support of his position, Enzo cites a case where the Court compounded the interest due "on a quarterly basis given the fact that Rexene's payments were due on a quarterly basis." Enzo Br. at 7; *Phillips,* 1997 WL 781856, at *28. Enzo, however, submitted no such evidence here that the Court should depart from the accepted practice in patent cases of compounding interest annually. *See Cornell,* 2009 WL 1405208, at *3. Chief Judge Rader explained in *Cornell*: "Although arguments can be made for utilizing another method, the payment of royalties and interest compounded annually is an accepted practice within the patent field." *Id.* (citing *Laitram Corp.*, 115 F.3d at 955) (compounding interest annually); *Michaels*, 1996 WL 722007, at *3-4.

Second, the rate that Enzo applies is wrong because it looks to ABI's cost of borrowing, rather than to making Enzo whole. Enzo's rate appears to be the rate that applies to long-term bonds for ABI and similarly AA-rated Moody's companies during the relevant damages period. Bell Decl. Ex. B. Mr. Napper opines that in his years as a damages expert, he has never seen this rate used. ABI has been able to find no case applying it. Enzo cites none. Enzo's calculation of the interest it is owed is based on factors specific to ABI's own credit rating. By that logic, then, the amount needed to compensate Enzo depends on the identity of the infringing party. A start-up company, with limited access to credit, would have to pay a larger amount in pre-judgment

9

interest than would a blue-chip company, for infringing the same patents using the same products.  This would allow the patentee to receive a windfall based on the level of creditworthiness of the defendant, rather than simply making the patentee whole for its "foregone use of the money between the time of infringement and the date of the judgment."  *See Gen. Motors*, 461 U.S. at 655-56.  ABI knows of no case suggesting such a rule or approving of its use, and Enzo has cited none.

In addition, Enzo's calculation is wrong because it applies the same fixed interest rate in the year 2004 and the subsequent years (2005-2012), namely 5.91%.  Bell Decl. Ex. B.  ("the prejudgment interest rate is locked in at the appropriate prevailing rate" in December 2004 which is the end of the damages period).  Again, Enzo cites no case supporting this approach.  Courts award pre-judgment interest based on the interest rates that apply for each year during the period of infringement, and not based on a fixed rate for a single year.  *See Cornell,* 2009 WL 1405208, at \*3-4.  Enzo's approach ignores the reality of the financial markets, and improperly inflates the pre-judgment interest award where rates were declining.  In fact, Treasury Bill rates declined after 2008.  And the long-term bond rates of Moody's AA rated companies (on which Dr. Bell relies) were also lower after 2004 in all except for one subsequent year.

Further, Enzo incorrectly asserts that "using the after-tax debt rate for ABI appropriately compensates Enzo for the default risk that it has borne."  Enzo Br. at 7.  Enzo has not explained whose default risk this is, *i.e.,* whether Enzo risked default or ABI risked default.  In any event, Enzo has presented no evidence of either.  Nor has Enzo asserted that the Court should apply the prime rate, which some courts have applied because it reflects the patent owner's cost of borrowing money during the period of infringement.  *See*, *e.g.*, *Church & Dwight Co.,* 2009 WL 2230941, at \*9-10.  In applying the prime rate, courts consider whether and at what rate the

patent owner had to borrow money during the period of infringement.   *See*, *e.g.*, *State Contracting,* 2002 WL 34365826, at *2 (awarding interest at prime rate plus 2.25% because that was "the rate that Plaintiffs had to pay on a loan to keep its business in operation during the time Defendants infringed Plaintiffs' patents.").   Here, Enzo does not base its calculation on (or provide any evidence of) its own costs to borrow money.

Nor does Enzo ask the Court to apply the prime rate, which rose to over 8% during the relevant period, and would threaten to double the damages award in this case.   Enzo has therefore waived its right to request application of the prime rate, another rate based on Enzo's cost of borrowing, or any other rate that is not set forth in Enzo's opening brief.   *See, e.g., Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Group LLC,* 491 F. App'x 201, 206-07 (2d Cir. 2012) (finding that the Committee waived its argument that New York's rate applied to pre-judgment interest "because the Committee never presented it to the district court"); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (argument waived where Plaintiff raised it in a reply brief but failed to argue it in his opening brief).

Thus, while ABI respectfully submits that no award of pre-judgment interest is appropriate here, ABI further submits that if the Court does award pre-judgment interest, it should do so using the 52-week Treasury Bill rate, compounded annually.   Post-judgment interest would then apply at the statutory rate—which is the Treasury Bill rate, compounded annually (*see* 28 U.S.C. § 1961)—to the jury's $48.6 million verdict and to any pre-judgment interest that the Court awards.

## CONCLUSION

For the foregoing reasons, ABI respectfully submits that the Court should deny Enzo's motion for an award of pre-judgment interest.

11

DATED: August 22, 2013

APPLERA CORP. AND TROPIX, INC.

By: /s/ *James T. Shearin*
    James T. Shearin (ct 01326)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT 06601-7006
    Telephone 203-330-2000
    Facsimile 203-576-8888
    jtshearin@pullcom.com

    Nicholas Groombridge (phv ct26383)
    Eric Alan Stone (phv ct05379)
    Peter Sandel (phv ct26386)
    Jennifer H. Wu (phv ct01717)
    Paul, Weiss, Rifkind, Wharton &
    Garrison, LLP
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Telephone 212-373-3212
    Facsimile 212-492-0212
    ngroombridge@paulweiss.com
    estone@paulweiss.com
    psandel@paulweiss.com
    jwu@paulweiss.com

    Bradford Paul Schmidt (phv ct05044)
    Life Technologies Corp.
    5791 Van Allen Way
    Carlsbad, CA 92008
    Telephone 760-603-7200
    Facsimile 760-476-6048
    bradford.schmidt@lifetech.com

    Katherine Nolan-Stevaux (phv ct05248)
    Life Technologies Corp.
    850 Lincoln Centre Dr.
    Foster City, CA 94404
    Telephone 650-554-3584
    Facsimile 650-554-2885
    katherine.nolan-stevaux@lifetech.com

    *Attorneys for the Defendants*

12

## CERTIFICATION

I hereby certify that on this date, August 22, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *James T. Shearin*
James T. Shearin (ct 01326)