UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENZO BIOCHEM, INC., ENZO LIFE SCIENCES, INC., and YALE UNIVERSITY,<br>　　　　*Plaintiffs*,<br>　　　*v.*<br>APPLERA CORP. and TROPIX, INC.,<br>　　　　*Defendants*. | Civil No. 3:04cv929 (JBA)<br><br>January 3, 2014 |

## RULING ON PLAINTIFFS' MOTION FOR AN AWARD
## OF PRE- AND POST-JUDGMENT INTEREST

On November 1, 2012, following a seven-day trial, the jury returned a verdict finding that Defendants Applera Corp. and Tropix, Inc. (collectively "ABI") were liable to Plaintiffs (collectively "Enzo") for damages resulting from ABI's infringement of U.S. Patent No. 5,449,767 (the '767 Patent) by ABI's manufacture, use, or sale of their reagent products. The jury rejected ABI's invalidity defenses of lack of written description, lack of enablement, and anticipation, and issued two advisory findings that (1) Enzo had not unreasonably delayed in filing suit, and (2) ABI was not materially prejudiced by any delay in filing this lawsuit. The jury awarded Enzo $48,587,500 in reasonable royalty damages.[1] (*See* Jury Verdict [Doc. # 476].)

Enzo now moves [Doc. # 525] for pre- and post-judgment interest. For the reasons that follow, Plaintiffs' motion is granted with modification as to the rate of prejudgment interest.

---

[1] The underlying facts of this case are described in greater detail in the Court's Ruling [Doc. # 523] on Post-Trial Motions ("Post-Trial Ruling").

I.      **Discussion**

   A.      **Prejudgment Interest**

   In patent cases, prejudgment interest on damages is awarded pursuant to 35 U.S.C. § 284, which provides that:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

   "The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation." *Gen. Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655 (1983). Prejudgment interest is awarded not for "punitive, but only compensatory, purposes" and "compensates the patent owner for the use of its money between the date of injury and the date of judgment," *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996), "to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement," *Gen. Motors Corp.*, 461 U.S. at 655.

   Consistent with this purpose, "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award." *Id.* at 657.  "[I]t may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Id.* However, "the withholding of prejudgment interest based on delay is the exception, not the rule." *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988).

ABI argues that Enzo should be denied prejudgment interest because—as it contended in its motion for summary judgment, at trial, and in its post-trial motions—Enzo delayed filing this lawsuit for more than seven years after it was aware of its potential claims.  (Defs.' Opp'n [Doc. # 528] at 3.)  ABI again cites (1) a 1995 letter that Dr. Elazar Rabbani, CEO of Enzo Biochem, sent to Dr. Michael Hunkapiller, who was then ABI's chief scientific officer, in which Dr. Rabbani contended that ABI should compensate it for "past infringement" (Mar. 30, 1995 Ltr. from Rabbani to Hunkapiller [DTX 127] at 004); (2) testimony from Dr. Hunkapiller that he "hung up" on a call with Dr. Rabbani in August 1997, ending the parties' negotiations over potential infringement claims by Enzo (Tr. Vol. V at 969); and (3) evidence that Enzo knew or should have known of ABI's infringement because the structures of its products were publicly available by 1997 (Post-Trial Ruling at 42).

Analyzing this evidence post-trial, the Court concluded:  "Though the issue of unreasonable delay is a close one, the Court finds there is insufficient evidence to show that it is more likely than not that Enzo knew of ABI's infringing activities as to the '767 patent, and chose to unreasonably and unjustifiably delay in filing suit."  (*Id.* at 44.)  The Court noted that "ABI's own actions in its negotiations with Enzo were less than fully forthright" and "Dr. Hunkapiller's casual dismissal of any infringement discussions likely made it more difficult for Enzo to figure out how ABI's products compared specifically to the '767 patent."  (*Id.* at 45.)  Further, the Court found that there was "simply insufficient evidence to support a finding that ABI suffered economic prejudice as a result of" Enzo's delay in filing this lawsuit, and that there was no indication that ABI "would have acted differently if Enzo had sued ABI earlier."  (*Id.* at 46–47.)

3

As Enzo correctly notes, the Court's prior rejection of ABI's laches defense does not preclude the Court from denying Enzo prejudgment interest on the basis of an unreasonable delay. *See Church & Dwight Co., Inc. v. Abbott Labs.,* No. 05-2142 (GEB) (LHG), 2009 WL 2230941, at *7 (D.N.J. 2009) ("[T]his Court's Laches Opinion does not prevent Abbott from arguing that C & D unduly delayed in filing suit.").  However, Defendants offer no persuasive grounds for the Court to reconsider its conclusion that ABI did not suffer economic prejudice as a result of any delay by Enzo in filing this lawsuit. *See id.* at *8 ("Abbott simply reiterated its previous arguments in support of the application of the doctrine of laches.  In light of the foregoing as well as the fact the award of prejudgment interest is the rule and not the exception, the Court concludes that C & D is entitled to prejudgment interest." (internal citations omitted)).  Defendants' current claim that a payment of prejudgment "interest itself is such a prejudice" (Defs.' Opp'n at 4), is best accommodated by the Court's determination of the appropriate rate of prejudgment interest to impose.

Given the absence of prejudice to ABI and the Supreme Court's mandate that prejudgment interest should "ordinarily be awarded" to restore infringement victims to the same position that they would have been in absent infringement, *see Gen. Motors Corp.,* 461 U.S. at 655, the Court concludes that an award of prejudgment interest is appropriate.

1.    *The Appropriate Rate of Prejudgment Interest*

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." *Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed. Cir. 1986).  District courts

4

have exercised this broad discretion to award prejudgment interest at rates ranging from the Treasury Bill rate, *see, e.g., Cornell Univ. v. Hewlett-Packard Co.*, No. 01-cv-1974, 2009 WL 1405208, at \*3 (N.D.N.Y. May 15, 2009) (Rader, Fed. Cir. *C.J.*) ("[T]he T-Bill rate has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement.") (citing cases), to "at or above the prime rate," *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (citing cases).

Enzo contends that "the after-tax debt rate for ABI" compounded semi-annually "appropriately compensates Enzo for the default risk that it has borne, without providing Enzo a windfall gain based on the compounding of the royalty income that Enzo otherwise would have remitted as income taxes." (Pls.' Mot. [Doc. # 525] at 7 (citing Bell Decl. [Doc. # 526] ¶ 2).) ABI asserts that "[t]he standard practice in patent cases is to award pre-judgment-interest at the Treasury-bill rate using annual compounding, which is the same rate that is required by statute for post-judgment interest." (Defs.' Opp'n at 7.) Under Enzo's method it would receive $25,612,118 in prejudgment interest, whereas under ABI's method, Enzo would receive $12,428,728.

Contrary to Defendants' assertion that the "standard practice" is to award prejudgment interest at the Treasury Bill rate, the Federal Circuit has explicitly rejected any purported "rule" that the prevailing party in a patent case must make an "affirmative demonstration" of entitlement to prejudgment interest at a rate higher than the Treasury Bill rate. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579–80 (Fed. Cir. 1988). In so holding, the Federal Circuit emphasized that there was no default rule for prejudgment interest and that district courts have substantial discretion to

determine the appropriate rate.  *See id.* at 1580 ("Simply put, the question of the rate at which such an award should be made is a matter left to the sound discretion of the trier of fact.").[2]

The Court is "guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'"  *Bio-Rad Labs., Inc.*, 807 F.2d at 969 (quoting *Gen. Motors Corp.*, 461 U.S. at 655).  Prejudgment interest is awarded for compensatory and not punitive purposes, *see Oiness.*, 88 F.3d at 1033, and thus "the merits of the infringer's challenges to the patent are immaterial in determining the amount of prejudgment interest," *Bio-Rad Labs., Inc.*, 807 F.2d at 969.

As a general matter, interest is awarded to "compensate [the lender] for the opportunity costs of the loan, the risk of inflation, and the . . . risk of default."  *Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004).  The Treasury Bill Rate is the "risk-free" interest rate charged on loans made to the United States government.  *See Applera Corp. v. MJ Research Inc.*, No. 3:98cv1201 (JBA), 2005 WL 2084319, at *2 (D. Conn. Aug. 29, 2005).  In contrast, the national prime rate "reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower," *Till v. SCS*

_____

[2] Chief Judge Rader's ruling in *Cornell Univ.* does not suggest otherwise. Defendants selectively quote from it and assert that "prejudgment interest should be calculated using the average, one-year T-bill rate, compounded annually."  (Defs.' Opp'n at 7 (quoting *Cornell Univ.*, 2009 WL 1405208, at *3).)  The omitted portion of the quoted sentence, however, makes clear that Chief Judge Rader did not assert that as a general proposition the Treasury Bill rate should be favored in all cases, but rather was addressing only the case before him.  *See Cornell Univ.*, 2009 WL 1405208, at *3 ("After careful consideration of the parties' arguments, this court finds that prejudgment interest should be calculated using the average, one-year T-bill rate, compounded annually.").

*Credit Corp.*, 541 U.S. 465, 479 (2004), i.e., a bank's largest and best customers with the lowest risk of default, *see Applera Corp*, 2005 WL 2084319, at *2.

The rate advocated for by Enzo, ABI's after-tax debt rate, attempts to put Enzo into the position it would have been in had it entered into a royalty agreement with ABI in 1998 and then agreed to provide financing to ABI in the form of delayed royalty payments up until the date of judgment.   (*See* Bell Decl. ¶ 2.)   This interest rate compensates Enzo for the delay in receiving its payments, and the risk it bore that ABI would not be able to make such payments.  *See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 936 F. Supp. 2d 30, 78 (D. Conn. 2013) (The award of "damages in a patent infringement action . . . . is based on what a 'hypothetical negotiation' between the patentee and the infringer would yield.").   By contrast, the Treasury Bill rate seeks to compensate Enzo for the lost opportunity to obtain a return on the investment of royalty payments that it should have been receiving from ABI since 1998.  (*See* Defs.' Opp'n at 8.)

Considering the justification for awarding prejudgment interest, the Court is persuaded that it is appropriate to award prejudgment interest at the Treasury Bill rate for two reasons.  First, although there is no default rule favoring any particular prejudgment interest rate, Enzo has not set forth any evidence that the use of the higher prime rate is necessary to adequately compensate it for the delayed royalty payments.  Courts have found that the Treasury Bill rate provides inadequate compensation where there is evidence that the patent holder was forced to borrow money at a higher interest rate or evidence that with timely royalty payments, it could have obtained a better return on its investment than the Treasury Bill rate.  *See, e.g., Tomita Technologies USA, LLC v. Nintendo Co., Ltd.*, No. 11cv4256 (JSR), 2013 WL 4101251, at *10 (S.D.N.Y. Aug. 14,

7

2013) ("Because Tomita fails to suggest that it borrowed money during the infringement period and therefore should be compensated at the higher prime rate, the Court hereby awards prejudgment interest at the Treasury Bill rate."); *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 136 (D.N.J. 2007) (citing cases) ("[S]ome courts, including the Federal Circuit, have applied the sensible approach that the T–Bill rate should be used as a baseline investment rate, absent evidence that the patent holder is entitled to a better rate, either because it had to borrow at a higher rate to cover the lost funds, or because it would have invested at a better rate.").

Second, although the Court concluded that Enzo's delay in bringing this suit did not bar it from recovery due to laches and now concludes that it does not preclude the awarding of prejudgment interest, it is appropriate for the Court to consider this delay to ensure that it does not result in Enzo receiving excessive compensation. Notably, the Court found the laches issue to be "a close one" and discussed written correspondence from Enzo seeking compensation for past infringement as early as 1995. (Post-Trial Ruling at 44). The jury verdict indicates that the jury credited the testimony of Dr. Rabbani over Dr. Hunkapiller, and the Court's post-trial ruling rejecting ABI's defense reflects the fact that Defendants failed to meet their burden of proof on this issue. *See id.* at 47 ("Here, the Court concludes that there is simply insufficient evidence to support a finding that ABI suffered economic prejudice as a result of the delayed 2004 lawsuit.").

Nevertheless, as the Court acknowledged in its Post-Trial Ruling, the rejection of the laches defense was not necessarily inconsistent with a finding that Enzo unreasonably delayed filing this action. The Court noted that "[m]ost importantly . . . even if the delay were to be found unreasonable, ABI has failed to prove the 'material prejudice' prong

required for a laches defense." (*Id.* at 46.)  Reviewing the record in this prejudgment interest context, the Court finds that the circumstances do not warrant the interest rate Plaintiff seeks.  While ABI may not have suffered prejudice as a result of this delay, it does not necessarily follow that Enzo should now be financially rewarded for it, and as the Supreme Court has recognized, such delay is grounds for limiting prejudgment interest. *See Gen. Motors Corp.*, 461 U.S. at 657.

Additionally, the Court can consider Enzo's litigation tactics that collectively contributed to the delay in reaching judgment in this case, including its failed assertion of infringement against ABI on five other patents.[3]  *See 800 Adept, Inc. v. Murex Sec., Ltd.*, 505 F. Supp. 2d 1327, 1334–35 (M.D. Fla. 2007), *aff'd in part & rev'd in part on other grounds,* 539 F.3d 1354 (Fed. Cir. 2008) ("The delay in the instant case might not have been an intentional litigation tactic, but it nonetheless prolonged resolution of the underlying business dispute." (footnote omitted)).  Such conduct combined with Enzo's delay in filing this suit collectively contributed to a prolonged period of prejudgment infringement, and the Court concludes that it is appropriate to limit the recovery that Enzo will receive as a result of such self-inflicted delay.  *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001) ("Crystal's two

---

[3] Enzo asserted infringement claims based on six patents in 2004.  The Court granted judgment to ABI regarding three patents on the grounds of noninfringement (the '830 and '373 patents) and invalidity (the '928 patent).  (*See* Doc. ## 248, 251, 247, 261.) The Federal Circuit affirmed the Court's judgments as to the '830 and '928 patents, and Enzo did not appeal the judgment as to the '373 patent.  Enzo dropped its claims as to the '955 and '824 patents.  Although the Court initially invalidated Enzo's claim regarding the sixth patent ('767), the Federal Circuit reversed the dismissal for indefiniteness, and the '767 patent issues were presented to the jury.  According to Defendants, the '767 patent stands rejected by the Patent Office as invalid over Bauman prior art.  (Defs.' Opp'n at 5.)

9

year delay in initiating the present suit caused the damages owed . . . to escalate."). Accordingly, prejudgment interest will be awarded using the same interest rate set by 28 U.S.C. § 1961 for post-judgment interest:  the one-year Treasury Bill rates for the relevant time period, compounded annually, resulting in interest of $12,428,728.  (*See* Napper Decl. Ex. D [Doc. # 529-4].)  The Federal Circuit has held that a district court does not abuse its "substantial discretion . . . to determine the interest rate in patent infringement cases" by awarding prejudgment interest at the same rate set by statute for post-judgment interest.  *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (internal quotation marks omitted) ("[W]e are unconvinced here that the Treasury bill rate of section 1961 fails to 'adequately compensate' Datascope.").

### B.      Post-Judgment Interest

Post-judgment interest is mandatory and is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).  It is computed daily to the date of payment and compounded annually.  *Id.* § 1961(b).  ABI acknowledges that post-judgment interest should be awarded on the jury's $48,587,500 verdict and on any prejudgment interest awarded by the Court.  (Defs.' Opp'n at 11.)

Accordingly, post-judgment interest is awarded beginning November 7, 2012 on $61,016,228, which represents the damages award together with prejudgment interest, until the judgment is satisfied.

II.     **Conclusion**

For the foregoing reasons, Plaintiffs' Motion [Doc. # 525] for an Award of Pre- and Post-Judgment Interest is GRANTED with modification as to the rate of prejudgment interest.  The Clerk is directed to amend the judgment to reflect an award of prejudgment interest in the amount of $12,428,728 for a total award of $61,016,228. Post-judgment interest shall be awarded on the total judgment of $61,016,228 from November 7, 2012 until the judgment is satisfied.


IT IS SO ORDERED.

       /s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 3rd day of January, 2014.